MOLTON, ALLEN & WILLIAMS, INC., Plaintiff,

v.

Patricia Roberts HARRIS et al., Defendants.

Civ. A. No. 76–0054.

United States District Court,
District of Columbia,
Civil Division.

Aug. 30, 1977.

Arthur I. Cantor, Philip N. Brownstein, Barry P. Rosenthal, Washington, D.C., for plaintiff.

David R. Schlee, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is an action for breach of contract. The plaintiff alleges that it had a contract with the defendant, the Government National Mortgage Association (GNMA), a unit of the Department of Housing and Urban Development, to purchase 38 FHA–

insured mortgage options. It prays for $3 million in damages, plus interest, for breach of the alleged contract. In addition to GNMA, the Secretary of Housing and Urban Development and the President of GNMA are named as parties defendant.

■ The matters presently before the Court are the defendants' motion to dismiss for want of jurisdiction and the parties' cross motions for summary judgment. The defendants argue that this Court lacks subject matter jurisdiction over plaintiff's action and that exclusive jurisdiction lies in the Court of Claims pursuant to the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491. All parties agree there are no material facts in dispute.

Plaintiff alleges jurisdiction on six separate grounds: 5 U.S.C. §§ 702–04 (judicial review of administrative action), 12 U.S.C. §§ 1702, 1723a (waiver of sovereign immunity for defendants herein), 28 U.S.C. § 1331(a) (federal question), 28 U.S.C. § 1332(a)(1) (diversity of citizenship), 28 U.S.C. § 1337 (regulation of commerce and monopolies), and 28 U.S.C. § 2201 (declaratory judgments). In our opinion, three of these allegations are obviously without merit. The Supreme Court has held that section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–06, does not afford an independent grant of subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). It has been uniformly held that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not afford an independent ground for federal jurisdiction. *E.g., Continental Bank & Trust Co. v. Martin*, 112 U.S.App.D.C. 354, 303 F.2d 214, 215 (1962). The better view, and the rule in this District, is that "sue and be sued" clauses, such as 12 U.S.C. §§ 1702 & 1723a, are not jurisdictional grants. *See Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974); *Trans-Bay Eng'rs & Bldrs., Inc. v. Lynn*, 396 F.Supp. 265, 268 (D.D.C.1975), *modified on other grounds*, 179 U.S.App.D.C. 184, 551 F.2d 370 (1976) [1];

*Ghent v. Lynn*, 392 F.Supp. 879, 880–81 (D.Conn.1975); *cf. Korman v. FHA*, 72 App. D.C. 245, 113 F.2d 743, 746 (1940) (sue and be sued clauses *only* waive sovereign immunity). Three colorably meritorious allegations of jurisdiction remain: diversity of citizenship, regulation of commerce and monopolies, and federal question.

## I. DIVERSITY OF CITIZENSHIP JURISDICTION

■ Normally, diversity jurisdiction is not an issue in actions against Federal Government officials in their official capacities. The historic rule is that agencies and instrumentalities of the Federal Government are citizens of no state for diversity purposes and that, therefore, because all parties on each side of a controversy must be citizens of different states for diversity jurisdiction to lie, diversity jurisdiction never lies in an action against the Federal Government or its officials in their official capacities. *See Texas v. ICC*, 258 U.S. 158, 160, 42 S.Ct. 261, 66 L.Ed. 531 (1922); *Hancock Fin. Corp. v. FSLIC*, 492 F.2d 1325, 1329 (9th Cir. 1974). Recently, however, the Court of Appeals for this Circuit placed a gloss on that historic rule. In *Trans-Bay Eng'rs & Bldrs., Inc. v. Hills*, 179 U.S.App. D.C. 184, 551 F.2d 370, 376 (1976), the Circuit Court held that the Secretary of Housing and Urban Development, a defendant herein, is a citizen of the District of Columbia for diversity purposes and that diversity jurisdiction lies when a citizen of another jurisdiction sues the Secretary. The defendants have persuasively argued that this holding is "plainly erroneous," premised on "no credible authority," and would "materially expand diversity jurisdiction" to the detriment of the Court of Claims' exclusive jurisdiction. We, however, are bound to follow the holding unless it is in direct conflict with a holding of the Supreme Court, even though it appears anomalous.

In practice, the *Trans-Bay* holding means that citizens of any state may sue the Sec-

---

1. The Court of Appeals stated specifically that it need not pursue this question. 551 F.2d at 376.

retary in federal district courts on causes of action traditionally falling within the exclusive jurisdiction of the Court of Claims but that citizens of the District of Columbia must continue to sue in the Court of Claims. It takes little imagination to see that the Court of Claims' historic jurisdiction would be significantly abridged if the *Trans-Bay* holding were extended to cover other federal officials or instrumentalities.

It could be argued that *Trans-Bay* does not significantly abridge the Court of Claims' jurisdiction because it only applies to federal officials for whom Congress has otherwise waived sovereign immunity. This argument, however, virtually transforms a waiver of sovereign immunity into a grant of federal jurisdiction and renders virtually meaningless the many waivers of sovereign immunity which are coupled with *specific* grants of federal jurisdiction, *e.g.*, 15 U.S.C. § 634(b)(1) (Administrator of Small Business Administration), 19 U.S.C. § 2350 (Secretary of the Treasury), 39 U.S.C. §§ 401, 409 (Postal Service).

In further support of their argument that diversity jurisdiction does not lie here, defendants assert that the United States is an indispensable party to this action and that because joinder of the United States would destroy complete diversity, we cannot sustain the allegation of diversity jurisdiction.[2] Defendants cite several cases which are superficially supportive of this argument. *E. g., Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140 (1945); *Zapata v. Smith*, 437 F.2d 1024 (7th Cir. 1971). These cases held that the United States was an indispensable party because a money judgment was sought from the United States Treasury and that because the United States could not be joined the action must be dismissed. Close scrutiny of these cases reveals, however, that the reason the United States could not be joined was because sovereign immunity had not been waived. *See generally* 7 Wright & Miller, Federal Practice and Procedure

§ 1617, at 172 (1972). None arose in the context of deciding whether an indispensable party destroyed complete diversity, and we have been unable to find any indispensable party cases involving the United States which arose in such a context. Our inability to find these cases may be due to the novelty of *Trans-Bay*'s holding that a federal officer can be subject to diversity jurisdiction. In any event, these cases are not in point because we do have a waiver of sovereign immunity here. This appears to support plaintiff's position that diversity jurisdiction lies in this action. It does nothing, however, to resolve the anomaly—which is the true meaning of *Trans-Bay*—that a waiver of sovereign immunity is a virtual grant of federal jurisdiction because it can be coupled with an invocation of diversity or federal question jurisdiction.

## II. FEDERAL QUESTION AND COMMERCE AND MONOPOLIES JURISDICTION

### A. Federal Common Law as the Basis for Federal Question Jurisdiction.

The Supreme Court has held that federal question jurisdiction exists where federal common law provides the rule of decision. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Plaintiff argues that because the federal common law of contract provides the rules of decision in the instant case, *Illinois v. City of Milwaukee* controls and federal question jurisdiction properly lies here.

It seems obvious that plaintiff's argument does not state the proper rule. If plaintiff's argument were to prevail, every Government contracts case where the waiver of sovereign immunity was not dependent solely on the Tucker Act could be brought in a federal district court because the federal common law of contracts provides the rules of decision in all Government contracts cases.

**2.** Defendants also argue that GNMA and its President are indispensable parties whose presence destroys complete diversity. We find this argument untenable, however, because GNMA

and its President act as agents for the Secretary and the presence of disclosed agents is not necessary to resolve this dispute.

In *Illinois v. City of Milwaukee*, the Supreme Court was concerned with whether state or federal courts should fashion the common law of pollution. Considering the important federal interest involved, it is not surprising the Court chose to lodge that responsibility in the federal courts. Here, however, the same concern is not present. The issue before the Court is whether this action will be adjudicated in the Court of Claims or in a federal district court. Both are federal courts. There is no question of state versus federal interests. The Court of Claims, which specializes in federal contract law, is just as competent to fashion and construe the federal common law of contracts as are federal district courts. In this context, the Court does not believe *Illinois v. City of Milwaukee* should be read to authorize federal question jurisdiction in district courts when Congress has provided that the Court of Claims should exercise exclusive jurisdiction. We therefore hold there is no federal question jurisdiction in the instant action on the basis of federal common law. *But see Ghent v. Lynn*, 392 F.Supp. 879, 881–82 (D.Conn.1975).

The plaintiff cites the recent decision in *Trans-Bay Eng'rs & Bldrs. v. Hills*, 179 U.S. App.D.C. 184, 551 F.2d 370 (1976), as supportive of its contention that federal question jurisdiction lies here. A close analysis of that decision, however, reveals that federal question jurisdiction was found there because the plaintiff's claim was founded upon "equitable rights generated by HUD's course of activities pursuant to federal statutes." 551 F.2d at 377. The Court distinguished *Lindy v. Lynn*, 501 F.2d 1367 (3d Cir. 1974), where the complaint was dismissed for want of jurisdiction, on the ground that *Lindy* involved only the interpretation of contract rights.

This action, like *Lindy*, involves only contract rights. It is therefore not within the rule of *Trans-Bay*. The fact that *Lindy* involved the application of Pennsylvania contract law, 501 F.2d at 1369, while this action involves the application of the federal common law of contracts, makes no difference, in our opinion, because of the distinctive statutory policy that actions of this kind be adjudicated in the Court of Claims. *See* S.Rep. No. 1894, 86th Cong., 2d Sess. 3 (1960).

B. The National Housing Act as the basis for Federal Question or Commerce and Monopolies Jurisdiction.

Plaintiff alleges that federal question and commerce and monopolies jurisdiction lie because the action arises under the National Housing Act, a statute regulating commerce.[3] The cases make it clear, however, that in order for an action to "arise under" a federal law, that law must be a "direct element" in the plaintiff's claim, or there must be a need for determining the meaning or application of such a law. 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3562, at 411–13 (1975). The action at bar, however, does not involve the National Housing Act as a "direct element." There is no need to construe or apply the Act. The Act does not provide the substantive right and remedy, even though it waives sovereign immunity with respect to the transaction at issue. Therefore, the action does not "arise under" the Act. *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974).

### III. CONCLUSION

This is a simple case sounding in contract. Congress established the Court of Claims to determine claims of this kind and magnitude. It is hard to conceive of a claim falling within the Court of Claims' exclusive jurisdiction that could not be urged to confer federal question, or even

---

**3.** Technically, plaintiff only alleged commerce and monopolies jurisdiction on this basis. This allegation is equivalent to alleging federal question jurisdiction, however, because sections 1331 and 1337 of title 28 are read alike and the same tests apply in determining whether a case is one "arising under" federal law. The only significance of section 1337 "lies in the fact that it does not require an amount in controversy." 13 Wright, Miller & Cooper, *supra* § 3574, at 503. The recent amendment to section 1331, which removes the amount in controversy requirement in cases against the Government, makes section 1337 even less significant.

commerce and monopolies or diversity, jurisdiction if plaintiff's arguments were to prevail, assuming a waiver of sovereign immunity. It would virtually "destroy the Court of Claims by implication." *See International Eng'r Co. v. Richardson*, 167 U.S. App.D.C. 396, 512 F.2d 573, 578 (1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976); *Warner v. Cox*, 487 F.2d 1301, 1306 (5th Cir. 1974). The legislative history of the Tucker Act shows that Congress intended the Court of Claims to have exclusive jurisdiction over claims of this kind. *See* S.Rep. No. 1894, 86th Cong., 2d Sess. 3 (1960). Since this Act is a specific grant of jurisdiction, it takes precedence over general jurisdictional statutes such as 28 U.S.C. §§ 1331, 1332, and 1337. We therefore distinguish *Trans-Bay* on the basis that that case did not involve only questions of contract law and regulations, as this one does, and was not clearly within the exclusive jurisdiction of the Court of Claims.

We conclude that this case is within the exclusive jurisdiction of the Court of Claims. Upon reaching such a conclusion, the Court has two options. It may exercise its discretion under 28 U.S.C. § 1406(c) and transfer this action to that court, where it will proceed as if it had been filed on the date it was filed in this Court, or it may dismiss the action. Counsel for plaintiff has advised us that it would prefer a dismissal, which would allow an immediate appeal. We will therefore enter an order dismissing for want of jurisdiction.

In this disposition, we do not reach the merits of plaintiff's contractual claim as to which defendants have asserted the possibly substantial defense that no contract ever in fact existed because the plaintiff's offer was never accepted.